## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
════════════════════════════   )
                               )
LAURA DIOGO-CARREAU            )
                               )
         Plaintiff,            )
                               )
                               )
     v.                        )
                               )          Civil Action
AMERICAN HOME MORTGAGE         )          No. 15-11020-PBS
ACCEPTANCE, INC.; HOMEWARD     )
RESIDENTIAL, INC. f/k/a        )
AMERICAN HOME MORTGAGE         )
SERVICING, INC.; OCWEN         )
LOAN SERVICING, LLC,           )
                               )
         Defendants.           )
════════════════════════════   )
```

### MEMORANDUM AND ORDER

March 10, 2016

Saris, C.J.

### INTRODUCTION

The plaintiff, Laura Diogo-Carreau, current homeowner and mortgage borrower, is suing the defendants, Homeward Residential, Inc., Ocwen Loan Servicing, LLC, and American Home Mortgage Acceptance, Inc.,[1] the current and former mortgage holders and servicers, for wrongful foreclosure; violations of Massachusetts's consumer protection law, Chapter 93A; and

---

[1] American Home Mortgage Acceptance, Inc., has not been served with process and has never appeared in this case. Therefore, it is dismissed from the case. See Fed. R. Civ. P. 4(m).

slander of title. Homeward and Ocwen now seek summary judgment, arguing that, because they assumed control over the plaintiff's mortgage pursuant to a "free and clear" bankruptcy sale from the former mortgage holder, all of the plaintiff's claims based on wrongdoing by the former holder are barred.

After hearing and supplemental briefing, the Court **ALLOWS** in part and **DENIES** in part the defendants' motion for summary judgment (Docket No. 24).

## FACTUAL BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise indicated.

On December 23, 2005, the plaintiff executed a note and mortgage in favor of the defendant, American Home Mortgage Acceptance, Inc. (the old mortgage company), secured by the plaintiff's home at 75 Charlotte White Road Extension, Westport, Massachusetts (the Property). The mortgage required the plaintiff to make payments for principal, interest, taxes, and hazard insurance. The sums for the principal and interest went to the old mortgage company, while the sums for taxes and insurance were paid into an escrow account.

Prior to February 2007, the plaintiff's normal monthly mortgage payment was $1,084, including taxes and insurance. In February 2007, the plaintiff received an unexpected bill from the old mortgage company for $1,349. Upon inquiry, the old

2

mortgage company informed her that the increase was due to her failure to maintain active insurance coverage from April 1—4, 2007. Under the terms of the mortgage, a lapse in insurance coverage would allow the old mortgage company to purchase an insurance policy and charge the plaintiff.

The record includes a hazard insurance policy that covers the plaintiff's home from April 1, 2007, through April 1, 2008. On March 16, 2007, a check issued to the plaintiff's home insurance company, Arbella Insurance, to cover this period. There is not a copy of the check in the record, however, so it is unclear who signed it. The "process date" of April 4, 2007 appears on the insurance document, Docket No. 27, Ex. 5 at 2, and the defendants claim that this "process date" indicates a gap in coverage of four days.

The record is also unclear about which party bore the responsibility for maintaining the insurance coverage. In her deposition, the plaintiff testified that she purchased the annual home insurance policies, but later in her deposition, she stated that the old mortgage company paid for the policies from the escrow funds. Docket No. 27, Ex. 1 at 6-7. In a subsequent affidavit, she avers that she "did not have to purchase insurance each year," but rather the old mortgage company automatically paid for the insurance policies and renewed them each year. Docket No. 36, Ex. 3 at 2. In the insurance policy

documents, the mortgagee, not the plaintiff, is listed as the expected payor for the period from April 1, 2007 to April 1, 2008. Docket No. 36, Ex. 3 at 6. However, the defendants point to the mortgage instrument which states that it is the plaintiff's responsibility to purchase and maintain home insurance. Docket No. 9 at 22.

After receiving the notice that the old mortgage company had increased her monthly mortgage payment, the plaintiff paid the original mortgage amount in March 2007 but did not make another payment until July 2007. At this point, she wrote a check for $5,500, representing approximately five months of mortgage payments at the lower, pre-dispute amount. The plaintiff, in an affidavit, states this check covered May through August 2007. The parties agree this was the plaintiff's last mortgage payment. The old mortgage company held the $5,500, but did not apply it to the plaintiff's mortgage balance. The record does not reveal what happened to the $5,500.

On August 6, 2007, the old mortgage company and several other related companies sought protection under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware. The plaintiff learned about the bankruptcy filing through the news media that same month, but did not receive any written notice from the old mortgage company. On October 11, 2007, the old mortgage company, through counsel,

4

notified the plaintiff that it intended to foreclose on her home because her mortgage was in default. The plaintiff took no action to contact the old mortgage company regarding the foreclosure and made no further payments.

On October 30, 2007, the bankruptcy court entered an order approving the old mortgage company's sale of assets, including the plaintiff's mortgage and the servicing rights, to the defendant Homeward, operating at that time under a different name. On November 6, 2007, the defendants published a notice, in miniscule, impossible-to-read print, in three newspapers, including the *New York Times*, announcing the bankruptcy sale and giving the deadline for filing a claim. Docket No. 48, Ex. 2 at 2. However, neither the old mortgage company nor the defendants sent individual, written notice to the plaintiff. At some point in 2007, after the bankruptcy order, the plaintiff received notice that Homeward would be the new servicer for her mortgage. The notice did not tell her to make mortgage payments to Homeward, and she did not make any mortgage payments to Homeward or the old mortgage company. The defendant Ocwen subsequently took over as the loan servicer. The parties agree that the plaintiff never made a payment to Ocwen either.

On September 8, 2008, the plaintiff filed this action to prevent a foreclosure of her mortgage and, in October 2008, the defendants filed a suggestion of bankruptcy. The plaintiff's

home remains in foreclosure status. The case was removed to this Court on March 19, 2015, on the basis of diversity jurisdiction.

**DISCUSSION**

### I.  **Collateral Estoppel**

The plaintiff argues that collateral estoppel bars the defendants from moving for summary judgment because the Massachusetts Superior Court already denied a nearly identical motion filed by the defendants and their predecessors on the merits. The defendants respond that the parties in the two cases are unrelated, and the superior court's order on Homeward's summary judgment motion did not reach the merits of the claims, precluding the application of collateral estoppel.

The key inquiry behind collateral estoppel is "whether defendants 'received a full and fair opportunity to litigate their claims'" in an earlier proceeding. Acevedo-Garcia v. Monroig, 351 F.3d 547, 575 (1st Cir. 2003) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332 (1979)). Because this case implicates the preclusive effects of a superior court judgment, "[t]he reach of a prior state court judgment is determined by state law." N.H. Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995). Under Massachusetts law, collateral estoppel only arises if four conditions are met: (1) there was a "final judgment on the merits in the prior adjudication;" (2) the "party against whom estoppel is asserted

6

was a party (or in privity with a party) to the prior adjudication;" (3) the "issue decided in the prior adjudication is identical with the one presented in the action in question;" and (4) the "issue decided in the prior adjudication was essential to the judgment in the prior adjudication." <u>Alba v. Raytheon Co.</u>, 809 N.E.2d 516, 521 (Mass. 2004).

The superior court's two-paragraph order denied Homeward's summary judgment motion for a single reason: because Homeward had "not been shown to be a party to [the] case." <u>Diogo-Carreau v. Am. Home Mortg. et al.</u>, No. BRCV2008-01196, at *1 (Mass. Super. Ct. Oct. 14, 2014) (Order on Motion for Summary Judgment) (Docket No. 36, Ex. 1). It then offered Homeward procedural options to clarify its relationship to the named defendants. The court did not address any of Homeward's substantive arguments. In a separate order issued the same day, the court ordered the plaintiff to amend her complaint to clarify the parties she was suing and relief she was seeking. <u>Diogo-Carreau v. Am. Home Mortg. et al.</u>, No. BRCV2008-01196, at *1 (Mass. Super. Ct. Oct. 14, 2014) (Order to Amend or Supplement Complaint) (Docket No. 40, Ex. 1). In short, the order speaks to a procedural issue, the identity of the parties, and not to the merits of the case. Consequently, collateral estoppel does not bar the defendants' summary judgment motion in this Court.

## II.  <u>Summary Judgment Standard</u>

Faced with a summary judgment motion, the Court must assess all facts in the record, and all reasonable inferences drawn from the facts, in favor of the non-moving party. <u>Perry v. Roy</u>, 782 F.3d 73, 77 (1st Cir. 2015). A summary judgment motion succeeds "only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Showtime Entm't, LLC v. Town of Mendon</u>, 769 F.3d 61, 69 (1st Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Genuine disputes arise when the evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A genuine issue of material fact must be built on a solid foundation—a foundation constructed from materials of evidentiary quality." <u>Perry</u>, 782 F.3d at 78 (internal quotation marks omitted).

### A. Effect of the "Free and Clear" Sale

The defendants argue the bankruptcy court order approving the sale of the old mortgage company's assets "free and clear" to Homeward forecloses the plaintiff's lawsuit and immunizes them from any claim based on the pre-bankruptcy actions of the old mortgage company. The plaintiff responds that the old mortgage company's bankruptcy case had no effect on her ability to sue the current defendants because she never received any

notice of the bankruptcy proceedings, other than general knowledge from the news media.

Under the Bankruptcy Code, the bankruptcy trustee may sell property "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). These sales allow buyers to purchase the assets of the bankrupt estate unencumbered by any outside interest. See id. The policy behind "free and clear" sales is to induce "a higher sale price for the assets, thereby maximizing the value of the estate and maximizing potential recovery to creditors." In re Grumman Olson Indus., Inc., 467 B.R. 694, 703 (S.D.N.Y. 2012).

"The Bankruptcy Code broadly defines 'creditors' to include all those who hold pre-petition 'claims' against the debtor." In re Arch Wireless, Inc., 534 F.3d 76, 80 (1st Cir. 2008) (quoting 11 U.S.C. § 101(10)(A)). "A 'claim' is broadly defined to include a 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'" Id. (quoting 11 U.S.C. § 101(5)(A)).

In order for a "free and clear" sale to extinguish prior claims, the claimant must receive notice of the sale. See 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease . . . property of the estate."); In re

Savage Indus., Inc., 43 F.3d 714, 721 (1st Cir. 1994) (observing
that the claim "could not be extinguished absent a showing" that
the claimant "was afforded appropriate notice in the particular
circumstances"). For notice purposes, bankruptcy law
distinguishes between "known creditors" and "unknown creditors."
Arch Wireless, 534 F.3d at 80. "An 'unknown creditor' is one
whose 'interests are either conjectural or future or, although
they could be discovered upon investigation, do not in due
course of business come to knowledge [of the debtor].'" Id.
(quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S.
306, 317 (1950)) (alteration in original)). "A 'known creditor,'
by contrast, is one whose claims and identity are actually known
or 'reasonably ascertainable' by the debtor." Id. at 81 (quoting
Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490
(1988)). "A creditor is reasonably ascertainable if its claim
can be discovered through reasonably diligent efforts." Id.
(internal quotation marks omitted). If a person communicates to
a debtor a claim that "could reasonably be understood to assert
an entitlement to affirmative compensation," that entity's
status as a "creditor" becomes "reasonably ascertainable." Id.
at 82.

Publication notice is adequate for "unknown creditors,"
whereas "known creditors" are "entitled to receive direct notice
of each stage in the reorganization proceedings." Id. at 80; see

generally Collier on Bankruptcy ¶ 363.02 (Alan N. Resnick & Henry
J. Sommer eds., 16th ed. 2016) ("Publication notice will not
bind a known creditor who did not receive direct notice.").
Although the bankruptcy statute does not define the exact notice
required for "known creditors," at the very least, a "known
creditor" is "entitled to more than mere publication notice."
Arch Wireless, 534 F.3d at 81. Here, of course, the debtor knew
the plaintiff's home address as her mortgage provider. Although
the plaintiff admits to general knowledge of the bankruptcy from
the news media, "the fact that the creditor may . . . be
generally aware of the pending reorganization, does not of
itself impose upon him an affirmative burden to intervene in
that matter and present his claim . . . . [T]he creditor has a
right to assume that proper and adequate notice will be provided
before his claims are forever barred." Id. at 83 (alterations in
original).

     In February 2007, the old mortgage company unilaterally
increased the plaintiff's mortgage payments after it removed
money from the plaintiff's escrow account to pay for additional
insurance coverage. The plaintiff testified that she called the
old mortgage company to complain about the improper removal of
funds from the escrow account and explained that the insurance
increase in February 2007 was in error. The first old mortgage
company employee she spoke to told her to contact the insurance

company to have the insurance policy documents sent to the
mortgage company. The plaintiff complied and confirmed that the
old mortgage company received the documents. The plaintiff next
spoke twice to an employee in the "adjustment department" and
explained that she had been overcharged in her mortgage payment.
Docket No. 27, Ex. 1 at 11. After reviewing her file, the
employee told her that the insurance issue was fixed and she
could make her regular mortgage payment for March 2007, which
she did.

At some point the plaintiff stopped paying her mortgage
each month, but later, she sent the old mortgage company a check
for $5,500, which covered April through August 2007. However,
this check was not applied to her mortgage balance and is not
accounted for in the record. The defendants offer no explanation
for what happened to this money, and have not provided any
evidence concerning their argument that the plaintiff was an
"unknown creditor" or that the old mortgage company lacked
knowledge of the plaintiff's claim prior to the "free and clear"
sale. On October 11, 2007, the old mortgage company sent the
plaintiff a notice of foreclosure and, on October 30, 2007, the
"free and clear" sale was approved.

At the time of this "free and clear" sale, this dispute
over the insurance payments and the disposition of the $5,500
had not been resolved. Because of this unchallenged evidence

that the old mortgage company knew, or reasonably should have
known, that the plaintiff had a claim against them beginning in
February 2007, well before the "free and clear" sale, the Court
denies the defendants' motion for summary judgment that they are
immunized from suit based on the pre-bankruptcy actions of the
old mortgage company.

**B. Count I: Wrongful Foreclosure**

The defendants argue that the plaintiff is barred from
claiming wrongful foreclosure due to any alleged errors the old
mortgage company committed in 2007 because, since 2007, the
plaintiff has not made a mortgage payment and is now "hopelessly
in default" on the terms of her mortgage. Docket No. 25 at 11.
The defendants seek to proceed pursuant to the statutory power
of sale under M.G.L. ch. 183, § 21 and M.G.L. ch. 244, §§ 11-17C
to effect a non-judicial foreclosure. The plaintiff responds
that, when the old mortgage company initiated foreclosure
proceedings, she was not in default of any terms of the mortgage
because she never allowed her home insurance to lapse and the
old mortgage company refused to properly credit her account with
her last mortgage payment.

A mortgage holder can foreclose on a property by the
exercise of the statutory power of sale "if such a power is
granted by the mortgage itself." U.S. Bank Nat'l Ass'n v.
Ibanez, 941 N.E.2d 40, 49 (Mass. 2011). Where there is a dispute

as to whether the mortgagor was in default, "the foreclosure goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure." Id. "Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight," the Supreme Judicial Court adheres to "the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms.'" Id. at 49-50 (quoting Moore v. Dick, 72 N.E. 967 (Mass. 1905)) (alterations in original). "If he fails to do so there is no valid execution of the power, and the sale is wholly void." Id. at 50.

The mortgage contract authorizes the mortgage holder to place insurance on the Property if the plaintiff's existing insurance lapses. The plaintiff claims that her insurance coverage never lapsed and that the old mortgage company acknowledged its error in placing additional coverage on the Property. The defendants point to the fact that the plaintiff's April 2007 to April 2008 policy bears a "process date" of April 4, 2007 and suggest that the Property was uncovered during those four days. On the same document, however, it states that the policy extended from April 1, 2007 to April 1, 2008, counter to the defendants' argument. Even if the insurance was set to lapse on April 1, 2007, it is unclear why a prospective four-day lapse in April 2007 would have authorized the old mortgage company to

14

purchase insurance and increase the plaintiff's monthly payment
two months earlier in February 2007.

Additionally, in her affidavit, the plaintiff claimed that
it was the old mortgage company who actually paid the home
insurance company by removing money from the escrow account. The
status of the plaintiff's insurance coverage during this alleged
period of lapse is a disputed fact that precludes summary
judgment.

Likewise the old mortgage company breached the terms of the
mortgage if, in the summer of 2007, it improperly refused to
credit the plaintiff's payments to her mortgage balance. The
plaintiff testified that she paid $5,500 to the old mortgage
company in July 2007, but this sum was not credited to her
account. The defendants have provided no evidence to contest the
plaintiff's claims, nor do they explain what happened to the
$5,500. There exists a genuine dispute about whether the old
mortgage company breached the terms of the mortgage when it
sought to foreclose, which precludes summary judgment on this
count.

## C. Count II: Chapter 93A

The defendants argue that the plaintiff failed to send them
a written demand letter outlining her Chapter 93A claims, a
jurisdictional requirement, and therefore, her claim fails as a
matter of law. The plaintiff does not oppose this portion of the

defendants' motion for summary judgment. Although, in her
verified and amended complaints and in her supplemental brief to
this Court, the plaintiff alleged that she sent a demand letter,
she has failed to produce this letter for the record. Because
the plaintiff did not oppose the motion for summary judgment on
this claim, summary judgment on Count II is allowed.

### D. Count III: Slander of Title

The defendants argue that the plaintiff's slander of title
claim is preempted by the Fair Credit Reporting Act, which
preempts state-law slander remedies for negligent credit
reporting. In her opposition, the plaintiff fails to respond to
this argument. Accordingly, summary judgment for Count III is
allowed without opposition.

### ORDER

The Court **ALLOWS** in part the defendants' motion for summary
judgment (Docket No. 24) with respect to Counts II and III and
**DENIES** in part with respect to Count I.


/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge